# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan B. Gottschall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 99 C 1558 | **DATE** | March 24, 2000 |
| **CASE TITLE** | John Michaels Enterprises, Inc.v. Richard Adams, Jr., et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1)  ☐  Filed motion of [ use listing in "Motion" box above.]

(2)  ☐  Brief in support of motion due _____.

(3)  ☐  Answer brief to motion due_____. Reply to answer brief due_____.

(4)  ☐  Ruling/Hearing on _____ set for _____ at _____.

(5)  ☐  Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6)  ☐  Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7)  ☐  Trial[set for/re-set for] on _____ at _____.

(8)  ☐  [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9)  ☐  This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■  [Other docket entry]  Enter Memorandum Opinion and Order. Defendants' Rule 12(b) Motion [5] and Rule 12(c) Motion [6] are granted in part and denied in part, as set forth on the accompanying Memorandum Opinion and Order. Plaintiff has 30 days from the date of this order to file an amended complaint.

(11) ☐  [For further detail see order (on reverse side of/attached to) the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | **Document Number** |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | 3·27-00 date docketed | 13 |
| X | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| RT courtroom deputy's initials | | | | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

JOHN MICHAELS ENTERPRISES, INC.,  )
an Illinois Corporation,  )
)
          Plaintiff,  )
)
          v.  )    No. 99 C 1558
)
RICHARD ADAMS, JR. and RICHARD ADAMS, SR.,  )    Judge Joan B. Gottschall
individually and as directors, officers & shareholders of  )
Guardian Sales Corporation, GUARDIAN SALES  )
CORPORATION, a Michigan Corporation, HAROLD  )
KRUL and JOHN MAYACK, individually and as  )
directors, officers & shareholders of Automotive  )
Marketing Specialties, AUTOMOTIVE MARKETING  )
SPECIALTIES, INC., a Michigan corporation, ADAM J.  )
BAKER, individually and as director, officer &  )
shareholder of Adam J. Baker, P.C., ADAM J. BAKER,  )
P.C., a Michigan professional corporation, HAIG H.  )
KASSOUNI, individually and as director, officer &  )
shareholder of Agape Plastics, Inc., AGAPE PLASTICS,  )
INC., a Michigan Corporation, ANTHONY CAPULO,  )
and SAM SCHISLER,  )
          Defendants.  )



## MEMORANDUM OPINION AND ORDER

### Background

    This case represents the latest skirmish in an ongoing litigation war between plaintiff

John Michaels Enterprises, Inc. ("JME") and defendant Guardian Sales Corporation. JME has

sued Guardian – along with various individuals and entities associated with Guardian – twice

before, and individuals associated with Guardian apparently have sued JME's president at least

once. In this installment, JME has sued not only Guardian, but also Richard Adams, Jr., Richard

Adams, Sr., Harold Krul, John Mayack, Automotive Marketing Specialties, Inc. ("AMS"), Adam J. Baker, Adam J. Baker, P.C., Haig H. Kassouni, Agape Plastics, Inc., Anthony Capulo, and Sam Schisler. JME seeks damages based on RICO violations, a breach of fiduciary duty, common-law fraud, conspiracy, and abuse of process. JME also asks the court to order an accounting.

Both JME and Guardian provide marketing and sales representation services to manufacturers. This litigation war arises from two projects JME undertook in a joint venture with Guardian. In the first, JME solicited and secured Agape Plastics, Inc. as a customer for the joint venture. Through a series of allegedly fraudulent acts by Guardian, Agape Plastics, AMS, Adams Jr., Adams Sr., Krul, Mayack, Capulo, Kassouni, Baker, and Baker P.C. (*see* Compl. ¶¶ 35-73), JME was deprived of the commissions Guardian agreed to pay it for the Agape project. Essentially, JME alleges that, by misrepresenting various facts about the project and about the relationships among Guardian, AMS, and Agape Plastics, defendants swindled JME out of its commissions.

In the second project, JME arranged for Choctaw Manufacturing Enterprises ("CME") to secure significant manufacturing business from AT&T. This work was also performed pursuant to JME's joint venture with Guardian. Through a series of allegedly fraudulent acts by Guardian, Adams Jr., Adams Sr., Krul, Baker, Baker P.C., and Schisler (*see* Compl. ¶¶ 74-104), JME again was deprived of the commissions agreed to by Guardian. Here, the crux of the fraudulent conduct was the misrepresentation of both the amount of business generated by the CME project and the resulting amount of commissions brought in by Guardian. Other misrepresentations were allegedly made regarding the nature of the work and JME's relationship with AT&T in an effort

to justify Guardian's termination of its commission agreement with JME.

In 1994, JME filed suit in Michigan state court against Guardian, Agape Plastics, Mayack, Krul, and AMS, alleging in its complaint that the defendants "defrauded Plaintiff out of its rightly earned commissions and finders fees and defeated the purpose of the underlying contract by and between Plaintiff and Defendant Guardian Sales Corporation." (Exh. 2 to Affid. of A. Baker ¶ 15)[1] The complaint alleged that AMS "is nothing more than the alter ego of Guardian Sales Corporation and was formed as a sham and suptrofuge [sic] to allow the principals of Guardian Sales Corporation, specifically president Rick Adams and business partner Harold Krul to continue in the benefits garnered by the efforts of the Plaintiff John Michaels Enterprises, Inc. without having to pay commissions." (*Id.* ¶ 11) In other words, defendants arranged for Agape Plastics to send its Guardian business to AMS – a sham corporation run by the same people who ran Guardian – so that Guardian would not have to pay commissions to JME. JME sought treble and punitive damages "due to the fraudulent activities of the Defendants." (*Id.* ¶ 21)

In the 1994 suit, JME brought three counts: breach of the agreement to split commissions

---

[1] Even though the court is treating defendants' motion for judgment on the pleadings as a motion to dismiss, the court may still take judicial notice of the state court records:

> The court may take judicial notice of matters of public record without converting a Rule 12(b)(6) motion to dismiss into a motion for summary judgment as long as the finding is not subject to reasonable dispute. . . . Matters of public record of which the court can take judicial notice include relevant decisions of other courts, particularly where those earlier proceedings have a direct relation to matters presently at issue.

*Tiv v. Reno*, No. 99 C 872, 2000 WL 246252, at *4 (N.D. Ill. Feb. 24, 2000) (citing *Henson v. CSC Credit Svcs.*, 29 F.3d 280, 284 (7th Cir. 1994); *Opoka v. INS*, 94 F.3d 392, 394 (7th Cir. 1996)).

by Guardian; violation of Michigan's Sales Representative Act by Guardian; and fraud by all defendants. (Exh. 3 to Affid. of A. Baker at 2)  In October 1995, the court granted summary disposition[2] in favor of defendants on the fraud claim, but gave JME an opportunity to amend and restate the claim. (*Id.* at 4-5)  Because JME never amended the complaint, the court dismissed the claim with prejudice in June 1996. (*Id.* at 5)  In November 1995, the state court granted summary disposition in favor of Guardian on the Sales Representative Act claim. (*Id.* at 3)  The court declined to grant summary disposition on JME's claim against Guardian for breach of the agreement. (*Id.* at 8)  Based on Guardian's agreement to pay $12,000, JME stipulated to the entry of judgment on this claim in March 1997. (Exh. 5 to Affid. of A. Baker)

In 1996, JME filed a second suit in Michigan state court against Adams, Krul, Mayack, Guardian, Agape Plastics, and AMS.  This complaint also alleged that JME was wrongfully deprived of the commissions owed it by Guardian for its work on the Agape project.  Among the allegations were that "Defendants conspired among themselves to have Agape terminate the Sales Representative Agreement dated June 13, 1990 between Agape and Guardian and to have Agape enter into a new agreement with Automotive Marketing Specialties, Inc. so as to avoid the payment of the 40% commission share to Plaintiff." (Exh. 4 to Affid. of A. Baker ¶ 25)  The complaint also recounted the history of the CME project and alleged that "Defendants have refused to pay to the Plaintiff his share of the commissions in accordance with the Joint Venture Agreement." (*Id.* ¶ 36)

In the 1996 suit, JME brought the following claims:  procuring cause doctrine against

---

[2] Michigan's "summary disposition" procedure under MCR 2.116(C)(10) is comparable to a motion for summary judgment under FED. R. CIV. P. 56. (*See* Exh. 7 to Affid. of A. Baker at 6-7)

Agape Plastics (Count I); breach of contract against AMS and Adams (Count II); third-party beneficiary claim against Agape Plastics (Count III); breach of contract against Guardian and Adams (Count IV); breach of implied covenant of good faith and fair dealing against Guardian and Adams (Count V); breach of fiduciary duty against Adams (Count VI); civil conspiracy against all defendants (Count VII); interference in contract relations against Krul, Mayack, Agape Plastics, and AMS (Count VIII); quantum meruit against Agape Plastics (Count IX); and unjust enrichment against all defendants (Count X). Count IV was based on the CME project, Count VI was based on both the Agape and CME projects, and the remaining counts were based on the Agape project.

JME never served Mayack, and so he was dismissed from the suit. (Exh. 7 to Affid. of A. Baker at 2 n.1) In February 1997, JME stipulated to the dismissal with prejudice of its claims against AMS and Krul. (Exh. 6 to Affid. of A. Baker) The court subsequently awarded AMS and Krul their costs and a reasonable attorney's fee as sanctions, as the court found that JME "did not have any factual support for its allegations nearly three years after it filed its first complaint and nearly an entire year after filing this complaint." (Exh. 7 to Affid. of A. Baker at 5) In April 1997, the court dismissed counts V, VII and X as to Guardian. (*Id.* at 6) In May 1997, JME stipulated to dismiss Agape Plastics. (*Id.* at 2) In September 1997, the court granted summary disposition on all counts against Adams, and on the remaining claim against Guardian. The court noted that "[a]lthough Plaintiff has had more than three years to do so, it still has failed to develop factual support for the allegations of its complaints." (*Id.* at 8) The court subsequently sanctioned JME for its claims against Adams and its claims against Guardian other than for breach of contract. The court concluded that JME's "claims as presented in this file

5

were simply based upon speculation and conjecture." (Exh. 8 to Affid. of A. Baker at 5)

## Analysis

Defendants have filed a 12(b) motion to dismiss and a 12(c) motion for judgment on the pleadings. Because a motion for judgment on the pleadings cannot be made before an answer has been filed, the court will treat the motion as one to dismiss under Rule 12(b). *See Rizzi v. Calumet City*, 183 F.R.D. 639, 640-41 (N.D. Ill. 1999). In deciding both of these motions under Rule 12(b), the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of JME. *Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1019 (7th Cir. 1992). The court may dismiss the complaint only if JME cannot present any set of facts that would entitle it to relief. *Jackson v. E.J. Brach Corp.*, 176 F.3d 971, 978 (7th Cir. 1999).

### *Personal Jurisdiction*

The court finds that it may exercise personal jurisdiction over defendants under the Illinois Long-Arm Statute, 735 ILCS 5/2-209. Under § 2-209(c), a court may exercise jurisdiction "on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c). This provision has been interpreted as allowing the exercise of jurisdiction where the defendants' contacts with the forum state satisfy due process. *See FMC Corp. v. Varonos*, 892 F.2d 1308, 1310 n.5 (7th Cir. 1990).

In this case, none of the defendants have had a significant number of contacts with Illinois. However, JME alleges that each of the defendants participated in fraudulent schemes directly targeting JME, an Illinois corporation. Because the objective of these schemes entailed harm to JME in Illinois, defendants had "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign." *Burger King Corp. v. Rudzewicz*, 471 U.S.

6

462, 472 (1985) (internal quotation marks omitted). Exercising jurisdiction over defendants under these circumstances does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted).

*Res Judicata*

Under the Full Faith and Credit Act, 28 U.S.C. § 1738, courts must treat a state court judgment with the same respect that it would receive in the courts of the rendering state. *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 373 (1996). Federal courts may not employ their own rules in determining the effect of a state court judgment, but must follow the rules of the state from which the judgment is taken. *Id.*

Defendants argue that judgments in two cases filed by JME in Michigan state court preclude JME's claims in this case. Under Michigan law, the doctrine of res judicata "bars a subsequent action between the same parties when the evidence or essential facts are identical." *Dart v. Dart*, 597 N.W.2d 82, 88 (Mich.), *reh'g denied*, 602 N.W.2d 576 (Mich. 1999), *cert. denied*, 68 U.S.L.W. 3401 (U.S. Mar. 20, 2000). The subsequent action is barred when (1) the first action was decided on the merits; (2) the matter contested in the second action was or could have been resolved in the first; and (3) both actions involve the same parties or their privies. *Id.* "Michigan courts have broadly applied the doctrine of res judicata," barring "not only claims already litigated, but every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not." *Id.*

JME raises two objections to the application of res judicata in this case. First, JME argues that the issues and facts to be determined in this case are different from those determined

7

in the previous state court cases. Essentially, this argument consists of JME's assertion that "[d]eciding whether JME had stated a claim for common law fraud and its material misrepresentation and reliance requirements is not the same as deciding the predicate act and pattern elements required by the RICO statute." (Resp. at 11)

JME's argument misses the mark. The operation of res judicata is not defeated by styling the claims differently in the second suit, nor by recasting the identical operative facts into a new cause of action. Rather, the relevant inquiry is whether "the matter contested in the second action was or could have been resolved in the first." *Dart*, 597 N.W.2d at 88. The fact that the state court judgments were based on JME's state-law claims does not shield the current RICO claims from res judicata. While JME is correct that it would need to establish certain statutory elements to recover under RICO, those elements of proof do not negate the fact that the underlying matters being litigated are identical. And the fact that JME has now brought exclusively federal claims does not lessen the preclusive effect of the state court judgments. *See Matsushita Elec. Indus. Co.*, 516 U.S. at 374 (holding that Full Faith and Credit Act "is not irrelevant simply because the judgment in question might work to bar the litigation of exclusively federal claims"). If federal courts barred the operation of res judicata whenever a plaintiff could recast previously adjudicated state law fraud and conspiracy claims as a RICO cause of action, the finality of state court judgments would be dealt a serious blow.

The core facts of JME's complaint – *i.e.*, the disputes over the Agape and CME projects – are identical to the allegations raised in the state court proceedings. And while some particular allegations in JME's current complaint are not found in the state court complaints – most notably, allegations of perjury in the state court proceedings – the court discerns no allegations

that could not have been raised in state court. Further, JME has not identified any specific allegations or evidence that are relevant here, but were not relevant to the state court proceedings. The fact that evidence was relevant in state court to establish a fraudulent representation under Michigan common law, but is now relevant as a "predicate act" under RICO is, for purposes of res judicata, a distinction without a difference.

JME's second objection to the operation of res judicata in this case is that the state court judgments were obtained by fraud. JME alleges that it only entered into a consent judgment in the 1994 suit because Adams and Baker claimed that Guardian no longer received commissions from Agape. (Compl. ¶ 54) In reality, however, the individuals who owned, controlled or managed Guardian were still receiving commissions because they also owned, controlled or managed AMS. (*Id.* ¶ 55) While JME now implies that it learned of this after the state court judgments were entered, the pleadings suggest otherwise. In its complaint in the 1994 suit, JME alleges that AMS "is nothing more than the alter ego of Guardian Sales Corporation and was formed as a sham and suptrofuge [sic] to allow the principals of Guardian . . . to continue in the benefits garnered by the efforts of [JME] without having to pay commissions." (Exh. 2 to Affid. of A. Baker ¶ 11)

JME also alleges that the court's summary judgment order in the 1996 case was based on defendants' misrepresentations about the Aspen and CME projects. Additionally, JME claims that defendants "routinely stymied JME on discovery" and provided false and misleading information to JME. (Resp. at 13) JME has not set forth any facts underlying these allegations which it did not know at the time or could not have reasonably discovered before the close of the state court proceedings.

9

More fundamentally, all of these allegations relate to "intrinsic fraud" in the state court proceedings, as opposed to "extrinsic fraud." Michigan courts have held that intrinsic fraud includes perjury, discovery fraud, and fraud in inducing a settlement. *See Sprague v. Buhagiar*, 539 N.W.2d 587, 589 (Mich. Ct. App. 1995). While under some circumstances a litigant can obtain relief from a judgment obtained by intrinsic fraud, such "relief cannot be by independent action but, rather, must be by motion in the case in which the adverse judgment was rendered." *Rogoski v. City of Muskegon*, 309 N.W.2d 718, 722 (Mich. Ct. App. 1981); *see also Sprague*, 539 N.W.2d at 589 (holding that exclusive remedy for intrinsic fraud is "to move to reopen the judgment pursuant to MCR 2.612(c)"). Because JME would not be allowed to seek relief from the previous judgments in an independent state court proceeding, it may not do so in federal court.

This does not end the res judicata inquiry. The court must also determine whether the suits are between identical parties or their privies. JME is the plaintiff in all three suits. Defendants Adams Jr., Guardian, Krul, Mayack, AMS, and Agape Plastics were also defendants in one or both of the state court suits. Accordingly, provided that the state court claims against these parties were adjudicated on the merits, the current claims against them are precluded.

The only defendants who were not sued in either of the state court suits are Adams Sr., Capulo, Kassouni, Baker, Baker P.C., and Schisler. The court must determine whether any or all of these parties can be considered in privity to the parties sued. "While there is no general prevailing definition of privity, it has been described as including a person so identified in interest with another that he or she represents the same legal right." *Viele v. D.C.M.A.*, 423 N.W.2d 270, 274 (Mich. Ct. App.), *judgment modified on other grounds*, 432 N.W.2d 171

(Mich. 1988). Examples include the relationships of "principal and agent, master and servant, or indemnitor and indemnitee." *Id.*

Under this standard, to the extent these defendants have been sued in their capacities as representatives of previously sued entities, privity is satisfied. JME has sued Adams Sr. as director, officer, and shareholder of Guardian and Kassouni as director, officer and shareholder of Agape Plastics. (Compl. at 1-2) To the extent JME's state court claims against Guardian and Agape Plastics were adjudicated on the merits, JME's claims here are precluded insofar as they address Adams Sr. and Kassouni in their representative capacities. However, JME has also sued Adams Sr. and Kassouni in their individual capacities. (*Id.*) Thus, they remain in the case only in their individual capacities.

While the court is skeptical that JME can establish liability against Baker or Baker P.C. apart from their legal representation of parties sued previously, the factual record is insufficient to make that determination at this stage. Thus, Baker and Baker P.C. remain in the case. Similarly, given JME's allegation that Capulo was never on the Guardian payroll, the court at this stage cannot find him in privity with Guardian for purposes of res judicata. (Compl. ¶¶ 40-42) Schisler, as general manager of CME, also remains in the case given that CME was never sued previously.

Finally, in order to preclude the claims here, the prior suits must have been decided on the merits. It is clear that the summary adjudications of JME's claims constitute decisions on the merits. (*See* Exhs. 3, 7, 8 to Affid. of A. Baker) Under Michigan law, JME's voluntary dismissals also are considered to be decisions on the merits. "[A] voluntary dismissal with prejudice acts as an adjudication on the merits for res judicata purposes." *Limbach v. Oakland*

*Cty. Bd. of Cty. Road Commissioners*, 573 N.W.2d 336, 340 (Mich. Ct. App. 1997), *appeal denied*, 593 N.W.2d 559 (1999). The only state court defendant whose case does not appear to have been adjudicated on the merits is Mayack, who was dismissed because he was never served. (Exh. 7 to Aff. of A. Baker at 2 n.1) Because the court cannot determine from the record whether his dismissal was with or without prejudice, Mayack will remain in the case at this stage.

The court notes that res judicata normally is pled as an affirmative defense. FED. R. CIV. P. 8(c). However, JME has not objected to defendants' raising of the issue on a motion to dismiss, and indeed has substantively addressed the issue in its reply. In any event, the Seventh Circuit has observed that it is "clear that res judicata may be raised by pre-answer motion or at least that it is within the district court's discretion to allow it to be so raised." *Lambert v. Conrad*, 536 F.2d 1183, 1186 (7th Cir. 1976); *see also Pearson v. Hafnia Holdings, Inc.*, No. 90 C 991, 1991 WL 18421, at *1 (N.D. Ill. Feb. 7, 1991) (rejecting notion that because a motion to dismiss based on res judicata requires introduction of evidence beyond the pleadings, it should be treated as motion for summary judgment).

Accordingly, the court dismisses – as precluded based on res judicata – JME's claims against AMS, Agape Plastics, Guardian, Adams Jr., and Krul, as well as Adams Sr. and Kassouni to the extent they are sued in their representative capacities. Because JME does not allege that any defendants other than Guardian owed JME a fiduciary duty, Count V of JME's complaint is dismissed in its entirety. Further, because JME's claim for an accounting is brought only against Guardian, Count IX of JME's complaint is dismissed in its entirety. The rest of JME's claims are not precluded – at least by res judicata – as to Capulo, Schisler, Baker, Baker P.C., and Mayack, as well as Adams Sr. and Kassouni to the extent they are sued in their individual

capacities.

*Collateral Estoppel*

Defendants argue that collateral estoppel also precludes JME's claims. Under Michigan law, "[c]ollateral estoppel precludes relitigation of an issue in a subsequent, different cause of action between the same parties when the prior proceeding culminated in a valid final judgment and the issue was actually and necessarily determined in the prior proceeding." *Barrow v. Pritchard*, 597 N.W.2d 853, 855 (Mich. Ct. App. 1999) (internal quotation marks omitted). Further, collateral estoppel requires mutuality, which is satisfied only if "the one taking advantage of the earlier adjudication would have been bound by it, had it gone against him." *Id.* at 855-56. As for the parties not dismissed based on res judicata, the court cannot determine on this record that mutuality of estoppel would be satisfied.

*Sovereign Immunity for Schisler*

The court rejects defendants' argument that JME's claims against Schisler are barred under the doctrine of sovereign immunity. It is not clear from the complaint that Schisler committed his allegedly tortious acts in his capacity as an employee of the Mississippi Band of Choctaw Indians. Dismissal on that basis is premature at this stage.

*Judgment on the Pleadings for Baker P.C. and Mayack*

Defendants argue that Baker P.C. is entitled to judgment on the pleadings because the law firm did not exist at the time of the relevant events in this suit. As discussed above, the court is treating defendants' motion for judgment on the pleadings as a motion to dismiss. Consequently, the court will not consider the affidavit from Baker regarding the timing of his firm's creation. Because it is not apparent on the face of the complaint that JME cannot state a claim against

13

Baker P.C., the court cannot dismiss Baker P.C. at this stage of the litigation. Further, JME's allegations against Baker P.C. are not limited to conduct in 1993, but address conduct as recent as April 1997.

The court also declines to consider the evidence defendants have submitted in support of their argument that Mayack is entitled to judgment on the pleadings based on his discharge in bankruptcy proceedings. In any event, JME has raised an issue as to whether the discharge was effective as to its claim against Mayack.

### *Request for Transfer*

Defendants request that the court transfer this case to Michigan. Transfer of venue under 28 U.S.C. § 1404(a) is proper if the moving party demonstrates that: (1) venue is proper in the transferor district; (2) the transferee district is one where the action might properly have been brought; and (3) the transfer will serve the convenience of parties and witnesses and the interest of justice. *Medi USA, L.P. v. Jobst Inst., Inc.*, 791 F. Supp. 208, 210 (N.D. Ill. 1992) (citations omitted). Not surprisingly, the parties dispute the third prong of this test.

In evaluating the convenience and fairness of transfer, the court must consider both the private interests of the parties and the public interest of the court. *Id.* (citations omitted). The private interests include: (1) the plaintiff's choice of forum; (2) the situs of material events; (3) the relative ease of access to sources of proof in each forum; and (4) convenience to the parties. Public interest factors include the transferor court's familiarity with applicable law and the desirability of resolving controversies in their locales. *Id.* (citations omitted).

None of the factors clearly favor transfer. JME has chosen this forum. Many of the material events appear to have occurred via telephone and mail communications between

Michigan and Illinois. Relevant documents, which will likely make up a good part of the evidence, will come from the defendants in Michigan, as well as from JME in Illinois. Non-party witnesses will likely come from Louisiana, Mississippi, and Michigan. And while a transfer to Michigan would be more convenient for defendants, it would be less convenient for JME.

As for public interest factors, this court is familiar with the types of claims raised in JME's complaint. Finally, given that the events on which this claim is based cannot be said to have occurred exclusively in either Illinois or Michigan, neither forum has a stronger interest in the resolution of this controversy. Under these circumstances, JME's choice of forum will not be disturbed. *See Heller Financial v. Midwhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989) (noting that defendant "has the burden of showing that the transferee forum is clearly more convenient") (internal quotation marks omitted). Defendants' request for transfer is denied.

*RICO – Statute of Limitations*

Defendants have moved to dismiss JME's RICO claims on several grounds, including the statute of limitations. RICO claims are subject to a four-year statute of limitations. *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.*, 483 U.S. 143, 145 (1987). JME asserts that if a predicate act occurs within four years of the RICO claim's filing, the claim is timely. (Resp. at 19) This argument misstates the Seventh Circuit's approach to the accrual of RICO claims. "[A] RICO claim accrues when the plaintiff discovers her injury, even if she has not discovered the pattern of racketeering." *Bontkowski v. First Nat'l Bank of Chicago*, 998 F.2d 459, 461 (7th Cir. 1993) (quoting *McCool v. Strata Oil Co.*, 972 F.2d 1452, 1465 (7th Cir. 1992)).

In this case, all of JME's claims boil down to two basic injuries: loss of commissions on the Agape project, and loss of commissions on the CME project. In setting forth its RICO

claims, JME treats these projects as separate schemes for purposes of RICO liability. The court thus will analyze the projects separately in determining when JME's RICO claims accrued.

JME filed suit based on its lost Agape commissions in February 1994. (Exh. 1 to Affid. of A. Baker) As discussed above, the 1994 suit was based on the same factual allegations that underlie JME's RICO claim. It is clear that JME knew of its lost Agape commissions by February 1994. However, JME alleges that its injury remains ongoing, as Guardian continues to wrongfully withhold its Agape commissions. While the Seventh Circuit has held that "a new cause of action under RICO arises on the occurrence of each separate injury," *McCool v. Strata Oil Co.*, 972 F.2d 1452, 1465 (7th Cir. 1992), the "new cause of action accrues only when there is a new instance of wrongful conduct and a new injury." *Id.* at 1465 n.10.

Even a continuing RICO violation does not justify recovery for all injuries in one lawsuit because "RICO injuries flow from individual predicate acts, not from the pattern itself." *Id.* at 1466. To be able to recover for the commissions that were wrongfully withheld within the four-year limitations period, JME would need to allege at least one predicate act that occurred within those four years. *See United States v. Walsh*, 700 F.2d 846, 856 (2d Cir. 1983). The only misconduct that is alleged to have occurred within the limitations period is defendants' perjury and fraudulent statements during the Michigan litigation. These are not predicate acts, *see Midwest Grinding Co. v. Spitz*, 976 F.2d 1016, 1021 (7th Cir. 1992) ("[W]e know that telling a lie or committing perjury is not per se a RICO predicate act for one simple reason: it is not included among the list of predicate acts in 18 U.S.C. § 1961(1)."), and in any event are not alleged with the requisite particularity. *See infra* note 3. Accordingly, to the extent JME's RICO claim seeks to recover the lost Agape commissions, it is time-barred.

As for the lost CME commissions, JME did not seek to bring a claim for its CME-related harm in state court until November 1995. (Exh. 3 to Affid. of A. Baker at 3)  Further, the complaint in this case indicates that JME did not discover that it had been deprived of the CME commissions until "a year and a half" after "late in the fall of 1993." (Compl. ¶¶ 98, 99)  Given the vagueness of this language, the court cannot determine on a motion to dismiss that JME learned of its injury more than four years before March 9, 1999.  Accordingly, to the extent JME's RICO claim seeks recovery for CME-related injuries, defendants' motion to dismiss on statute of limitations grounds is denied.

### RICO – Pattern of Racketeering

Defendants argue that JME has failed to allege adequately a RICO pattern.  Civil liability under RICO requires a "pattern of racketeering activity." 18 U.S.C. § 1962.  Unfortunately, "[t]he murkiness of RICO's parameters coupled with its alluring remedies have led many plaintiffs to take garden variety business disputes and dress them up as elaborate racketeering schemes." *Uniroyal Goodrich Tire Co. v. Mutual Trading Corp.*, 63 F.3d 516, 522 (7th Cir. 1995).  As a result, "[o]ur RICO jurisprudence is replete with examples of failed attempts to dress up state fraud claims as suave RICO cases using the expansive definitions of mail and wire fraud." *Id.* at 523 (citing *In Lipin Enters. v. Lee*, 803 F.2d 322, 324 (7th Cir. 1986)).  In light of these dangers, courts have used specific criteria to define a "pattern of racketeering activity."

The Seventh Circuit looks to several factors in determining the existence of a pattern:  the number and variety of predicate acts; the length of time over which the predicate acts were committed; the number of victims; the presence of separate schemes; and the occurrence of distinct injuries. *Id.* at 524.  These factors do not suggest the existence of a pattern.  First, JME

has specifically alleged only a handful of phone calls and letters as predicate acts. Second, the only predicate acts alleged with any particularity occurred in the summer and fall of 1993.[3] Third, JME alleges no victims other than itself. Fourth, while there are two schemes alleged, only one gave rise to injury within the limitations period. Fifth, JME's only injury that is not time-barred is the lost CME commissions.

While these factors "may be helpful, the touchstones of the inquiry remain the elements of relationship and continuity." *Id.* This means that "the predicate acts must be related to one another (the relationship prong) and pose a threat of continued criminal activity (the continuity prong)." *Midwest Grinding Co.*, 976 F.2d at 1022. While defendants' acts are all related to the alleged defrauding of JME, they do not pose a threat of continued criminal activity.

Continuity can be evaluated as a "closed-ended" or "open-ended" concept. *Id.* A closed-ended period of racketeering activity "involves a course of criminal conduct which has come to a close." *Id.* The alleged criminal conduct underlying JME's RICO claims – *i.e.*, defendants' fraudulent conduct toward JME – has ended. To satisfy the continuity requirement under these circumstances, JME "must prove a series of related predicates enduring a 'substantial period of time.'" *Id.* (quoting *H.J., Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 242 (1989)). The

---

[3] In its response brief, JME alleges that Baker misrepresented to JME material facts regarding the CME project in April 1997, and cites to ¶ 103 of the complaint as support. (Resp. at 19-20) Paragraph 103, however, merely refers to misrepresentations made during the course of the state court litigation, and does not indicate when they took place. Assuming that statements made by an opposing counsel during litigation qualify as mail or wire fraud, JME does not allege the predicate act with sufficient particularity, and the court will not consider it. *See, e.g., Lachmund v. ADM Investor Svcs., Inc.*, 191 F.3d 777, 784 (7th Cir. 1999) (holding that RICO complaint based on mail and wire fraud "must be specific with respect to the time, place, and content of the alleged false representations, the method by which the misrepresentations were communicated, and the identities of the parties to those misrepresentations").

"underlying rationale" of this requirement "is that the duration and repetition of the criminal activity carries with it an implicit threat of continued criminal activity in the future." *Id.* at 1022-23.

JME has alleged with any particularity only a few acts of mail and wire fraud occurring in the summer and fall of 1993.[4] There is no threat of continued criminal activity. By the very fact that JME has brought its allegations, it has uncovered defendants' fraud. There is thus no possibility that defendants will successfully defraud JME in the future – at least as to the schemes alleged in JME's complaint. The fact that several predicate acts were required to bring about the past fraud of JME does not necessarily satisfy the continuity component or give rise to a pattern of racketeering. "[J]ust because the complexity of the transaction creates the potential for a greater number of possible fraudulent acts does not mean that there is the requisite threat of continued criminal activity." *Uniroyal Goodrich Tire Co.*, 63 F.3d at 523.

Even assuming that the ongoing withholding of the Agape commissions could qualify defendants' conduct as an "open-ended" period of racketeering activity, it still fails to show the requisite continuity. Where a course of criminal activity lacks duration and repetition, "[a] RICO plaintiff may still satisfy the continuity requirement . . . by showing past conduct which 'by its nature projects into the future with a threat of repetition.'" *Midwest Grinding Co.*, 976 F.2d at 1023 (quoting *H.J., Inc.*, 492 U.S. at 242). This threat exists where a plaintiff can show: (1) a specific threat of repetition; (2) that the predicate acts are part of an ongoing entity's regular way of doing business; or (3) that the defendant operates a long-term association that exists for

---

[4] The court does not reach the issue as to whether these predicate acts have been alleged with *sufficient* particularity.

criminal purposes. *Id.* In short, an open-ended conspiracy must show "clear signs of threatening to continue into the future." *Id.*

The court does not believe that JME's allegations, if proven, could meet this standard. The only ongoing aspect of defendants' alleged schemes is that JME is not being paid Agape project commissions to which it is entitled. The withholding of the commissions by AMS is not alleged to constitute mail or wire fraud. More fundamentally, the fact that the harm caused by defendants' alleged racketeering activity is continuing does not mean that the racketeering conduct itself – mail and wire fraud – is continuing. Mail fraud occurs "where in order to get money or something else of monetizable value from someone you make a statement to him that you know to be false, or a half truth that you know to be misleading, expecting him to act upon it to your benefit and his detriment." *Emery v. American General Finance, Inc.*, 71 F.3d 1343, 1346 (7th Cir. 1995); *see also Bankcard America, Inc. v. Universal Bancard Systems, Inc.*, Nos. 98-2528, 98-2529, 98-2530, 2000 WL 109888, at * 7 (7th Cir. Feb. 1, 2000) ("For a mail and wire fraud RICO violation to exist there must have been intent to defraud.").

Even assuming that defendants might repeat their false statements regarding the Agape or CME projects to JME in the future, JME already believes – or at least purports to believe – that those statements are false. Defendants are well aware that JME believes the statements to be false, having been sued three times now based on those statements. JME cannot show that – given the history between these parties – defendants reasonably would expect JME to act on those false statements. Further, given that defendants have already deprived JME of any right to commissions for the Agape and CME projects, JME is hard-pressed to show that defendants would make such statements with the intent to get something of monetizable value from JME.

20

Accordingly, defendants' possible repetition of those statements in the future – whether in conjunction with court proceedings or otherwise – cannot be considered mail or wire fraud. JME has not provided a reasonable basis for finding that defendants' alleged conduct poses a threat of continuing criminal activity, nor for finding that it constitutes a pattern of racketeering activity.

The fact that defendants' fraudulent Agape and CME schemes developed over time and required several communications with JME does not, standing alone, warrant the finding of a pattern for purposes of RICO. JME's RICO claims are dismissed without prejudice. The court does not reach the other grounds offered by defendants for dismissing JME's RICO claims.

*Fraud*

Defendants argue that JME's common-law fraud claim against Baker and Baker P.C. is time-barred pursuant to the five-year statute of limitations for fraud claims in Illinois. Based on the complaint, the court cannot find as a matter of law that all of the allegedly fraudulent misrepresentations by Baker and his law firm were made prior to March 9, 1994.

Defendants also attack the substance of JME's fraud claim against the lawyer and his firm. The elements of a fraud claim under Illinois law are: (1) a false statement of material fact; (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of this statement; and (5) damage to the other party resulting from such reliance. *Teamsters Local 282 Pension Trust Fund v. Angelos*, 649 F. Supp. 1242, 1245-46 (N.D. Ill. 1986), *aff'd*, 839 F.2d 366 (7th Cir. 1988). Further, "the reliance by the other party must be justified, i.e., he must have had a right to rely." *Id.* at 1246.

Defendants rely on *Schmidt v. Landfield*, 161 N.E.2d 702 (Ill. App. Ct. 1959), *aff'd*, 169 N.E.2d 229 (Ill. 1960), for the proposition that it was unreasonable for JME to have relied on

21

statements made during litigation by the opposing party's attorney. In *Schmidt*, the court held

that an opposing attorney could not be liable for making allegedly fraudulent statements relating

to a settlement "where plaintiffs were represented by counsel of their own choosing and the

alleged misrepresentations pertained to matters prudent counsel would ordinarily investigate

before approving the settlement." *Id*. at 704. The *Schmidt* court affirmed the trial court's

judgment on the pleadings for the defendant. *Id*. at 705.

     The court shares defendants' skepticism that JME could have "reasonably" relied on the

statements allegedly made by the opposing party's attorney. However, given JME's allegations,

the court cannot determine this issue on a motion to dismiss. Several factors determine the

reasonableness of a plaintiff's reliance, including: information in JME's possession that should

have put it on inquiry; ease of access to outside information; and relative sophistication of the

parties. *Teamsters Local 282 Pension Trust Fund*, 649 F. Supp. at 1249-50. A fuller factual

record is required to judge the reasonableness of JME's reliance.

### Civil Conspiracy

     Defendants argue that JME's claim for civil conspiracy is time-barred given its five-year

statute of limitations under Illinois law. *See Pfeifer v. Bell and Howell Co.*, 368 N.E.2d 520, 522

(Ill. App. Ct. 1977). "The statute of limitations in a civil conspiracy runs from the commission

of the last overt act alleged to have caused damage." *Austin v. House of Vision, Inc.*, 243 N.E.2d

297, 299 (Ill. App. Ct. 1968) (citations omitted). Based on the complaint's allegations, the court

cannot rule as a matter of law that the conspiracy claim accrued before March 9, 1994.

     Defendants also argue that the conspiracy claim fails because an agent cannot conspire

with its principal under Illinois law. However, JME's complaint does not allege merely that

Baker and Baker P.C. conspired with their clients, but rather that they conspired with all of the defendants. Further, on a motion to dismiss, the court is not in a position to determine whether Baker and Baker P.C. were acting solely in their attorney-client capacities.

Finally, defendants argue that the conspiracy claim fails because there can be no conspiracy to breach a contract. While that is true, defendants' argument is based on an overly narrow view of JME's conspiracy claim. JME alleges not just that defendants conspired to breach its agreements with Guardian, but that defendants engaged in a conspiracy to defraud JME. Illinois courts recognize conspiracy to defraud as an independent cause of action. *Hawthorne Partners v. AT&T Technologies, Inc.*, No. 91 C 7167, 1992 WL 53684, at *5 (N.D. Ill. Mar. 11, 1992) (citations omitted). The elements of a conspiracy to defraud are: (1) a conspiracy; (2) an overt act of fraud in furtherance of the conspiracy; and (3) damages to the plaintiff as a result of the fraud. *Id.* The court finds that, at least at this stage of the litigation, JME has satisfied this standard.

*Abuse of Process*

In Count VIII, JME alleges that defendants committed abuse of process by suing JME's president, Terrence Donohue, "in state court a) despite the fact that Defendants knew the joint venture agreements were between the corporate entities, JME and Guardian, and b) despite the fact that the basis of that lawsuit is known by Defendants to be without merit, filed and pursued for the twin purposes of harrassing [sic] Donohue and disguising, as well as bringing to fruitition [sic], their schemes to defraud JME." (Compl. ¶ 166) JME's abuse of process claim is also based on defendants' interference with "JME's legitimate, lawful efforts in state court to enforce its rights under the joint venture agreements with Guardian." (*Id.* ¶ 167)

The elements of abuse of process under Illinois law are: first, an ulterior purpose or motive; and second, "some act in the use of the legal process which is not proper in the regular prosecution of the proceedings." *Michael Neuman & Associates, Ltd. v. Florabelle Flowers, Inc.*, No. 92 C 3765, 1994 WL 695548, at *3 (N.D. Ill. Dec. 9, 1994). In other words, "plaintiffs must allege that the lawsuit is being used to accomplish a result which could not be accomplished through the lawsuit itself." *Id.* To do so, Illinois courts have held that "plaintiffs must allege an actual arrest or a seizure of property." *Id.* This is referred to as the "special injury" requirement. *Id.*

There is a distinct possibility that, to the extent JME's abuse of process claim is based on the 1994 Michigan suit, the claim is time-barred. An action for abuse of process is governed by a two-year statute of limitations. *Withall v. Capitol Federal Savings of America*, 508 N.E.2d 363, 367 (Ill. App. Ct. 1987). Given that JME did not execute its consent to judgment on several of the 1994 claims until March 11, 1997 – and this suit was filed on March 9, 1999 – the court cannot determine that defendants' alleged misconduct occurred outside the limitations period.

As to the first component of JME's abuse of process claim – the unspecified "state court" suit against Terrence Donohue – JME has not alleged facts sufficient to show that it has standing to bring such a claim. Under Illinois law, standing requires "some injury in fact to a legally cognizable interest." *Messenger v. Edgar*, 623 N.E.2d 310, 313 (Ill. 1993). JME has not alleged facts showing that it has been injured by virtue of a suit against its president. Further, JME has not alleged any special injury flowing from this state court suit. "It is the settled law of Illinois that mere institution of a suit or proceeding, even with a malicious intent or motive, does not itself constitute an abuse of process." *Withall*, 508 N.E.2d at 368 (quoting *Holiday Magic, Inc. v.*

24

*Scott*, 282 N.E.2d 452 (Ill. App. Ct. 1972)).

The other component of JME's claim – defendants' conduct in the Michigan suits brought by JME – lacks allegations showing that an abuse of process has taken place. Dubious conduct during litigation does not, standing alone, constitute abuse of process. For example, Illinois courts have found no abuse of process where "misrepresentation, concealment and perjury allegedly hid the equitable owner's interest in real estate." *Barrett v. Baylor*, 457 F.2d 119, 123 (7th Cir. 1972) (citing *John Allan Co. v. Brandow*, 207 N.E.2d 339 (Ill. App. Ct. 1965)). Further, an abuse of process claim is not stated where the plaintiff "does not allege any special harm other than that which normally flows from any litigation." *Id.* In the Michigan suits, JME sought to recover its commissions. By defendants' allegedly perjurious conduct, JME was denied those commissions. There is no special injury alleged. Accordingly, Count VIII is dismissed.

## Conclusion

For these reasons, defendants' 12(b) and 12(c) motions are granted in part and denied in part, as set forth above. Defendants Richard Adams, Jr., Guardian Sales Corp., Harold Krul, Automotive Marketing Specialties, Inc., and Agape Plastics, Inc. are dismissed from this case. Further, Richard Adams, Sr. and Haig H. Kassouni are dismissed to the extent they are sued in their representative capacities. Because Guardian has been dismissed, Counts V (breach of fiduciary duty) and IX (accounting) are also dismissed. Counts I-IV (RICO) and VIII (abuse of process) are dismissed for failure to state a claim. Count VI (fraud) survives as to Adam J. Baker and Adam J. Baker P.C., and Count VII (conspiracy) survives as to Baker, Baker P.C., Richard Adams, Sr. (individual capacity only), John Mayack, Anthony Capulo, Haig H. Kassouni

(individual capacity only), and Sam Schisler.

Unless JME files an amended complaint within 30 days of the date of this order, these dismissals will be entered with prejudice. Given the apparent animosity between the parties, the previous findings of the Michigan state court, and the breadth of allegations in JME's initial complaint, the court cautions JME to ensure that a factual basis exists for all of its allegations. If necessary, the court will enforce the mandate of Rule 11 *sua sponte*. *See* FED. R. CIV. P. 11.

ENTER:

JOAN B. GOTTSCHALL
United States District Judge

DATED:    March 24, 2000